McKinney, J.,
delivered the opinion of the Court.
This cause is brought here by appeal from so much of the decree of the Chancellor as refused to reform a clause of the Will of complainants’ testator, by supplying an omission therein, occasioned by the inadvertence of the person who wrote the Will.
The facts are these: The testator, John Eatherly, at the date of the Will, was the owner of a tract of land, on which he then lived, in Wilson county ; also, of certain slaves, and a small amount of choses in action, *463 and other personalty. The Will bears date 30th of January, 1856, and it was proved and admitted to record in proper form, in the County Court of Wilson. At its date, the testator had two sons, Turner B., and John C. Eatherly, and a married daughter, Dolly C. Young, wife of defendant, P. B. Young.
The Will first “bequeaths to” Turner B., “one-half” of tract of land on which testator resided; also “one-third” of the negroes of which he might be possessed at his death. The Will then proceeds as follows: “I also give and bequeath to Turner B. Eatherly, in trust, for the sole and separate use of my daughter, Dolly Caroline Young, wife of P. B. Young, during her lifetime, and after her death to her children, or the survivors of them.” Here the clause abruptly ends, without stating the subject or thing intended to be given.
Immediately following the foregoing unfinished clause comes this bequest, namely: “ I further give and bequeath to the said Turner B., in trust, for the said Dolly Caroline, one-third of the negro property of which I am possessed at my death, during her lifetime, and after her death, for her children, or the survivors of them.”
Next follows a bequest to John C. Eatherly of the other “one-third” of the negro property, some specified articles of personal property, and a note for $155 in money; and, lastly, follows a residuary clause, by which the testator gives all the residue of his personal property, of every kind and nature whatsoever, to his son, Turner B., whom ho appoints sole executor of the Will.
The parol evidence of the draughtsman of the Will, and other witnesses, establishes, very clearly, the inten *464 tion of the testator to give one-half of the land to his daughter, Mrs. Young; and his express instructions to the writer of the Will to that effect; and that the omission in the Will was the mere result of mistake and inadvertence on the part of the person who wrote the Will, the testator himself being blind. This evidence, however, is scarcely necessary to be noticed in this particular case. The omission, if it can be supplied at all, may be done from the evidence furnished by the paper itself, without the aid of proof dehors the Will.
The question is one of importance, and involves the exercise of an extremely delicate and dangerous jurisdiction, the temptation to the abuse of which has led the Courts to hedge it in by the most stringent rules, and to adopt a double degree of caution in its exercise. The language of the elementary books, as well as of the reported cases, on this subject, is too often rather general and inexplicit. The doctrine is stated in some of the books, in general terms, that parol evidence is not admissible to supply any clause or word which may have been inadvertently omitted by the person drawing or copying the Will: 1 Jarmon on Wills, (2d Am. ed;,) 846; Earl of Newbury’s case, 5 Madd., 364. And this principle is quoted with approbation by this Court, in Weatherhead vs. Sewell, 9 Humph., 272-300; and in the absence of ambiguity on the face of the Will, its correctness, as a general rule, is conceded.
The law requires that all Wills, with the isolated exception of nuncupative Wills, shall be in writing, and executed with certain solemnities; and to these the rule applies, with peculiar force, that parol evidence cannot be admitted, to contradict, add to, or explain their con *465 tents, even though the consequences may be the total or partial failure of the testator’s intended disposition: 1 Jar. on Wills, 343.
But no doubt can be entertained, in the present state of the law, in regard to the admissibility of parol evidence, to explain or .remove what may be regarded as a latent ambiguity in a Will. This much is generally conceded, though in some of the cases, the evidence has been received to remove what might, perhaps, seem to be rather of the nature of a patent, t ban a latent, ambiguity. And it may here be observed, that in cases of the sort under consideration, if a remedy exist at all, it must, under our judicial organization, be administered alone in a Court of Equity, whether the Will be of personal or real property, as we ha/e no Ecclesiastical Court, or Court of Probate, invested with any such jurisdiction : See Buchanan vs. Matlock, 5 Humph., 390, 398. In 1 Williams on Estate, 201, marg., it is said, that if there is an ambiguity upon the factum of the instrument, parol evidence may be admitted, under some circumstances, to explain it.
By ambiguity upon the factum is meant, not an ambiguity upon the construction, as whether a particular clause shall have a particular effect, but an ambiguity as to the foundation itself of the instrument, or a particular part of it, as whether the testator meant a particular clause to be part of the instrument, or whether it was introduced with his knowledge; whether a codicil was meant to re-publish a former, or subsequent, will; or, whether the residuary clause, or any other passage, was accidentally omitted. These are all matters of ambiguity upon the factum of the instrument.
*466 But, to justify the admission of parol evidence in such cases, the ambiguity must be upon the face of the paper; for where no ambiguity appears upon the face of the instrument, the Court will not admit parol evidence: See cases cited in notes to page 202 of Williams on Ex.; and particularly the case of Fawceth vs. Jones, 3 Phillim, (Eccl. Rep.,) 434, where it was sought to show that the residuary clause of the Will was not coextensive with the instructions given, through mere error and oversight of the drawer, and the testator himself. But Sir John Nichol, upon an elaborate review of all the previous cases on the subject, refused the application, on the ground that the Will had been regularly executed, and there was no ambiguity apparent upon the facg of it.
But, in the case of Blackwood vs. Domar, (commented on in Fawceth vs. Jones, 3 Phillim, 485,) the testator made instructions for a Will, in which he left the residuum to his youngest daughter, but the attorney, in writing the Will, omitted the residuary clause; and the Court admitted evidence as to the omission, and of the testator’s expressing himself as having left the residuum to his youngest daughter, and pronounced for the instructions as part of the Will. In noticing this case, Sir John Nichol observes, that there was an ambiguity on the face of the Will, inasmuch as there was a total omission of any disposal of the residue, . and a total omission of a provision for one of the testator’s daughters.
The result of the Ecclesiastical cases upon the subject, is stated, by Mr. Williams, to be, that where there is “some absurdity or ambiguity on the face of the Will, *467 ascribable to something either omitted or inserted,” and there is clear and satisfactory proof that .the insertion or omission. was contrary to the instruction of the testator, the Court is bound to pronounce for the Will, not in its actual state, but with such error first reformed or corrected, either by insertion of the passage comitted, or by the omission of that inserted: 1 Williams on Ev., 203, 204, and cases cited in notes.
In Story’s Eq. Jur., 1 vol., sec. 179, it is said there is no doubt that Courts of Equity have jurisdiction to correct mistakes in Wills, when they are apparent upon the face of the Will, or may be made out by a due construction of its terms; for in cases of Wills, the intention will prevail over the words. But, then, the mistake must be apparent on the facé of the Will, otherwise there can be no relief; for, at least since the Statute of frauds, parol evidence, or evidence dehors the Will, is not admissible to vary or control the terms of the Will, although it is admissible to remove a latent ambiguity.
But the mistake, in order to lead to relief, must be a clear mistake, or a clear omission, demonstrable from the structure and scope of the Will: Ib., sec. ISO. The mistake must be clearly made out, for if it is left doubtful, equity will not interfere Ib., sec. 181; and see cases cited in note 2.
In Roper on Legacies, 2 vol., 1456, it is said, that although Courts of Equity are in the habit of correcting errors and mistakes in bequests, yet that the exercise of its jurisdiction is to be resorted to with great caution. If the mistake be not clearly demonstrable, but is merely presumptive or conjectural, and can in any *468 way be reconciled with the rest of the Will, the Court will not correct the supposed mistake; for it is a rule of construction, that mistakes in a Will are never to be intended, if a reasonable construction can be found out.
It is essential to the validity of a bequest or devise, that the subject of the gift be capable of ascertainment : 2 Roper on Legacies, 1450. If, therefore, the testator, by mistake, wrongly describe the nature or quality of the gift, or omit to describe it altogether, in such cases, the bequest or devise, will, in general, be void, unless by reference to other parts of the Will, the mistake or omission can be supplied or explained: Ibid.
In Freeman vs. Freeman, 8 Vin. Abr. Tit. Devise, 51, the description of the nature of the subject of the gift, was, by mistake, omitted altogether. The bequest was to testator’s daughter, A, 550, omitting the word “pounds:” but immediately following, there was a bequest to the daughter, B., of five hundred and fifty pounds. It was contended that the legacy to A, was void, for uncertainty; but the Chancellor, Lord Cowper, held, that the subsequent bequest to B, explained and supplied the omission, and clearly showed the intention to give 550 pounds to A, and that the bequest was as good, and the description as certain, as if the word “pounds” had been expressed.
From the foregoing authorities, we think the omission in the Will under consideration, may be supplied. The mistake, it will be observed, consists simply in the omission to state the subject of the gift, which was plainly intended to be, the remaining half of his tract of land. The mistake is apparent upon the face of the paper, without resorting to extrinsic evidence. The omission, *469 in the language of Mr. Story, is “demonstrable from the structure and scope of the Will,” and it “cannot, in any way, be reconciled with the rest of the Will.”
Nothing can be more clearly established, from the face of the Will, than that the testator intended to dispose of all the property he possessed, of every description; and, it is equally clear, that he supposed that he had done so, by the Will. The Will, upon its face, shows what property he owned. All the personal property, including slaves, and choses in action, is specifically bequeathed. One half of his tract of land is also devised, specifically, to his son, Turner B., in bis own right; the omission, therefore, to dispose of the other moiety of the land, where the intention to dispose of all his estate is so fully manifested, is such an “absurdity or ambiguity on the face of the Will,” as, according to the authorities before referred to, would, perhaps, let in extrinsic evidence to remove it. But the present case does not call for the introduction of extrinsic evidence to remedy the mistake.
The face of the Will itself, not only demonstrates the mistake, but likewise furnishes the evidence by which the palpable omission may be supplied.
We have the incomplete clause in the Will, formerly written, so far as it goes, denionstrating the purpose and intention of-giving some other property, (not disposed of in the Will, as it stands,) to Turner B. Eatherly, in trust for Dolly C. Young, for life, with remainder to her children. What property was intended to be given by this clause? The Will itself, answers this question — it was the other moiety of the land — for the Will disposes specifically of every thing else he *470 possessed; and the remaining half of the land, not in terms, disposed of, as the Will now stands, is, therefore, the only subject which the unfinished clause of the Will could, by possibility, have contemplated.
It is not admissible to suppose, that the testator caused this clause to be framed, without, really intending thereby to make any gift for the benefit of his daughter, and her children. We are consequently forced to the conclusion, that the subject of the gift was, by inadvertence, unintentionally' omitted.
And, as the intention to dispose of all his property, is manifest, and yet, in fact, part of the land is not, in terms, disposed of, the conclusion is inevitable, that the subject of the gift, omitted in the clause referred to, was the moiety of the land.
Upon any other hypothesis, it is impossible to reconcile the intention of the testator, with the facts appealing upon the face of the Will.
It will, therefore, be decreed, that the omission be supplied, and the Will reformed, accordingly.
Decree of the Chancellor reversed.